UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WASHINGTON,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　Defendant. | Case No. 20-cv-05801-TSH<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 23 |

## I.　INTRODUCTION

Plaintiff William Washington brings this case against the government for refund of funds levied by the Internal Revenue Service and applied toward his income tax liabilities. The government moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). ECF No. 23. Washington filed an Opposition (ECF No. 25) and the government filed a Reply (ECF No. 26). The Court finds this matter suitable for disposition without oral argument and **VACATES** the January 28, 2021 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** the government's motion for the following reasons.

## II.　BACKGROUND

On August 18, 2020, Washington commenced this action seeking a refund of $29,876.12 of funds levied by the IRS from his wages or from his bank account for his income tax liabilities for the taxable years 2003, 2004, 2007, and 2008. Compl. ¶ 6-7, ECF No. 1. He brings two causes of action – (1) wrongful levy and (2) failure to release levy and unlawful tax collection – and requests the Court determine he is entitled to a refund and award him damages. *Id.* at 9. In

addition, Washington asks the Court to determine the levy is "unreasonable," the assessments are "inappropriate," and that the levy be "expunged" from his reports. *Id.* He requests "the installment payments, which to date, having no agreement commemorating same, be enjoined." *Id.* Washington also seeks damages pursuant to 26 U.S.C. § 7433, which allows taxpayers to bring a claim for damages if, "in the collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title." 26 U.S.C. § 7433(a).

**A.     Washington's 2003, 2004, 2007, and 2008 Income Tax Liabilities and Levy Payments**

Washington alleges that between February 1 and July 11, 2013, the IRS levied $29,876.12 from his bank account or from his wages. Compl. ¶ 7. In support, Washington attaches IRS Account Transcripts, dated October 23, 2013. *Id.*, Ex. 1. As part of its motion, the government attached Forms 4340, Certificates of Assessments and Payments, for Washington's Individual Income Tax Returns (Form 1040), for the taxable years 2003, 2004, 2007, and 2008.[1] Mot., Ex. A, ECF No. 23-1.

A review of the Account Transcript and Form 4340 for the taxable year 2003 shows that after Washington failed to file a timely income tax return, the IRS issued a Notice of Deficiency on February 12, 2008, and after he didn't petition the Tax Court, the IRS made subsequent assessments on July 28, 2008. After Washington submitted an untimely amended income tax return, the IRS abated the previously assessed tax and subsequently assessed additional tax and

---

[1] The Court may consider extrinsic evidence when "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document. . ." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). As discussed below, the Court may also consider extrinsic evidence when deciding factual challenges to jurisdiction under Rule 12(b)(1). Forms 4340 are admissible into evidence as self-authenticating official records of the United States, carrying a presumption of correctness. *See Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993), *cert. denied*, 512 U.S. 1219 (1994); *Hughes v. United States*, 953 F.2d 531, 535, 540 (9th Cir. 1992) ("[O]fficial documents-such as IRS forms-are probative evidence in and of themselves and, in the absence of contrary evidence, are sufficient to establish that notices and assessments were properly made."); *United States v. Peery*, 2019 WL 3459058, at *4 (E.D. Cal. July 31, 2019), *report and recommendation adopted*, 2019 WL 4605712 (E.D. Cal. Sept. 4, 2019). As a general rule, the "Certificates of Assessments and Payments establish[ ] a prima facie case for the United States." *United States v. Jones*, 33 F.3d 1137, 1139 (9th Cir. 1994); *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990).

1    other statutory additions against him on March 12, 2012. Compl., Ex. 1 at 1-3; Mot., Ex. A at 1-7.
2    Between February 19 and July 11, 2013, levy payments totaling $13,348.47 were applied to the
3    2003 taxable year. Mot., Ex. A at 4-5. The levy payments resulted in an overpayment of
4    $3,021.99 that was used to offset another agency debt pursuant to 26 U.S.C. § 6402. *Id.* at 6.
5    Notices of Intent to Levy were sent to Washington on November 2, 2008 and April 2, 2012. *Id.*
6    There is no indication that Washington filed a Collection Due Process ("CDP") Hearing Request
7    regarding any of these notices.

8        A review of the Account Transcript and Form 4340 for the taxable year 2004 shows that
9    after Washington failed to file a timely income tax return, the IRS issued a Notice of Deficiency
10   on December 30, 2008, and after he didn't petition the Tax Court, the IRS made subsequent
11   assessments on June 8, 2009. Washington submitted an untimely amended income tax return,
12   which the IRS accepted, and it abated a portion of the tax and additions previously assessed.
13   Compl., Ex. 1 at 4-5; Mot., Ex. A at 8-12. Between April 5 and April 18, 2013, levy payments
14   totaling $4,577.74 were applied to the 2004 taxable year. Mot., Ex. A at 10. The levy payments
15   resulted in an overpayment of $831.57 that was used to offset another agency debt pursuant to 26
16   U.S.C. § 6402. *Id.* at 11. Notices of Intent to Levy were sent to Washington on July 13, 2009 and
17   September 8, 2010. *Id.* There is no indication that Washington filed a CDP Hearing Request in
18   relation to the first notice, while the second appears to have been "refused or unclaimed." *Id.* at
19   10.

20       A review of the Account Transcript and Form 4340 for the taxable year 2007 shows that
21   after Washington failed to file a timely income tax return, the IRS issued a Notice of Deficiency
22   on January 10, 2009. Washington then submitted an untimely amended income tax return, and the
23   IRS made assessments based on his submission on May 31, 2010, followed by additional
24   assessments pursuant to an examination on July 26, 2010. Compl., Ex. 1 at; Mot., Ex. A at 13-17.
25   Between May 16 and June 3, 2013, levy payments totaling $4,577.73 were applied to the 2007
26   taxable year. Mot., Ex. A at 15. The levy payments resulted in an overpayment of $1,060.77 that
27   was used to offset another agency debt pursuant to 26 U.S.C. § 6402. *Id.* at 16. Notices of Intent
28   to Levy were sent to Washington on August 30, 2010 and March 16, 2012. *Id.* There is no

indication that Washington filed a CDP Hearing Request in relation to the first Notice, while the second notice appears to have been "refused or unclaimed." *Id.* at 15.

A review of the Account Transcript and Form 4340 for the taxable year 2008 shows that Washington filed an untimely income tax return that was accepted as filed by the IRS, and assessments were made accordingly on March 29, 2010. Compl., Ex. 1 at 8-9; Mot., Ex. A at 18-22. On May 2, 2013, a levy payment of $2,288.85 was applied to the 2008 taxable year. Mot., Ex. A at 20. The levy payment resulted in an overpayment of $1,953.48 that was used to offset another agency debt pursuant to 26 U.S.C. § 6402. *Id.* at 21. Notices of Intent to Levy were sent to Washington on August 30, 2010 and March 16, 2012. *Id.* There is no indication that Washington filed a CDP Hearing Request in relation to the first notice, while the second notice appears to have been "refused or unclaimed." *Id.* at 10.

**B.     Notice of Levy and Release of Levy**

On January 21, 2013, the IRS sent Washington's employer a Notice of Levy on Wages, Salary, or Other Income, listing the taxable years at issue as 2004, 2007, and 2008. Compl., Ex. 2. Washington alleges this notice was not sent to his last known address and alleges that no notice of levy was sent regarding the taxable year 2003. Compl. ¶¶ 8, 12. On January 29, 2013, Washington's employer sent him a Notice of Withholding, advising him that if he disputed the deductions, he must "contact the issuing agency reflected in the attached order." *Id.*, Ex. 9 at 7.[2] The IRS sent Washington's employer a Release of Levy dated June 28, 2013. *Id.*, Ex. 10.

**C.     Alleged Identity Theft in Relation to the Taxable Year 2011**

Washington alleges that he learned he had become the victim of identity theft on February 1, 2013. Compl. ¶ 14. In support, he attaches an Identity Theft Affidavit he states was submitted to the IRS that same day (Ex. 6) and a letter from the IRS dated May 3, 2013 (Ex. 7). The affidavit states that "someone filed a 2011 tax return, and I have yet to file 2011 or 2012," and identifies the "tax years affected" as 2011 and 2012. *Id.*, Ex. 6. The May 3 letter advises Washington that he may have been a victim of identity theft for 2011, as more than one tax return

---

[2] The letter states that the notice of levy was attached, but Washington did not include it as part of his exhibits.

4

was filed using his personal information for that year. *Id.*, Ex. 7. The letter further advises that the IRS adjusted his account to reflect the correct return information. *Id.* Reading the two documents together, it appears that the year affected by any potential identity theft was 2011. As part of its motion, the government attached a copy of IRS Account Transcripts for the taxable year 2011, which show that the first tax return for this year was submitted on October 29, 2012, and the subsequent return was submitted on February 21, 2013. Mot., Ex. B.

Washington alleges the IRS should not have continued levying on his income tax liabilities for the taxable years 2003, 2004, 2007, and 2008 due to an alleged identity theft related to his income tax return filed for the taxable year 2011. Compl. ¶¶ 16-17.

### D. Form 843, Claim for Refund

On April 12, 2015, Washington submitted a Form 843, Claim for Refund and Request for Abatement, claiming a refund for $31,655.91, due to an "illegal levy on wages," between January 21 and June 30, 2013. *Id.*, Ex. 13. As he did not identify the periods for which he sought a refund, the IRS sent Washington a letter on December 10, 2015, advising him that the Form 843 he submitted was viewed as a frivolous position and, if not corrected, the IRS would assess a penalty against him. *Id.*, Ex. 19. Washington then sent a letter to the IRS contesting the position. *Id.*, Ex. 16. Washington also sent letters to additional individuals within the IRS referring to his wrongful levy claim, but he failed to elaborate the details of the alleged erroneous levies, such as the dates of such levies, the liabilities they were applied to, or the basis for his contention that such levies were erroneous. *Id.*, Exs. 15, 17-18.

### E. Other Taxable Years

The Complaint also includes a letter from Washington to the IRS pertaining to a Notice of Levy he received for the taxable year 2015 and documents that pertain to a CDP hearing related to 2015. *Id.*, Exs. 14, 20-22. He alleges he was "forced to pay $290 per month . . . for the tax periods 2015, 2016, 2017, and 2018." Compl. ¶ 22. In addition, on November 30, 2020, Washington filed with the Court a Motion in Opposition to Motion for Extension of Time to File Responsive Pleading, to which he attached a Notice of Intent to Levy from the IRS pertaining to his income tax liabilities for the taxable year 2019. ECF No. 21.

5

### F. Motion to Dismiss

The government filed the present motion on December 21, 2020. It argues the case should be dismissed for lack of subject matter jurisdiction because, to the extent Washington claims the levy on his wages or bank account was wrongful under 26 U.S.C. § 7426, he is barred from bringing this action because § 7426(a)(1) provides the exclusive remedy for third-party wrongful levy claims. Mot. at 7. The government also argues that, even if Washington could bring a wrongful levy claim, it is untimely because any claim under § 7426 must be commenced within two years of the date of the levy. *Id.* at 8.

To the extent Washington seeks a refund of funds that were levied by the IRS and applied to his 2003, 2004, 2007, and 2008 income tax liabilities, the government argues the Court lacks subject matter jurisdiction because a taxpayer must satisfy certain jurisdictional prerequisites, including filing a proper and timely claim for refund with the IRS, in accordance with 26 U.S.C. § 7422(a). *Id.* The government argues Form 843 is not a valid vehicle for claiming a refund of income taxes, and there is nothing in the complaint or exhibits to suggest Washington filed any other document that can be construed as a proper refund claim. *Id.* at 9. The government also notes the Form 843 is dated April 12, 2015, and the subsequent letters addressing Form 843 are dated June 5, October 12, and December 10, 2015, and that even if Form 843 and subsequent letters can be construed as an informal claim for refund, the claim would only apply to the amounts levied after April 12, 2013 under 26 U.S.C. § 6511(b)(2)(B). *Id.* at 10.

As to Washington's damages claim, the government argues that, before bringing a claim under 26 U.S.C. § 7433, taxpayers must exhaust their administrative remedies available within the IRS. *Id.* (citing 26 U.S.C. § 7433(d)(1); *Conforte v. United States*, 979 F.2d 1375, 1377 (9th Cir. 1993); 26 C.F.R. § 301.7433-1(e)). Although Washington alleges he "has exhausted available administrative remedies," Compl. ¶ 24, the government argues that nothing in his complaint or accompanying exhibits demonstrates that he filed an administrative claim for damages with the IRS or that he in fact exhausted available administrative remedies prior to filing his complaint. Mot. at 11. Even if he had, the government argues his claim for damages is untimely because any such claim must be brought within two years after the date the right of action accrues, but

6

1   Washington brought this action seven years after he was aware of the levy. *Id.* (citing 26 C.F.R. §
2   301.7433-1(g)(2)).

3         To the extent Washington requests installment payments to the IRS be enjoined, the
4   government notes it is unclear what installment payments he seeks to enjoin, but any such claim is
5   enjoined by the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a), which provides that "no suit
6   for the purpose of restraining the assessment or collection of any tax shall be maintained in any
7   court by any person, whether or not such person is the person against whom such tax was
8   assessed." Mot. at 11. The government argues the Court lacks subject matter jurisdiction to grant
9   relief that falls within the purview of the AIA, as it is designed to permit the government to assess
10  and collect taxes with a minimum of pre-enforcement judicial interference. *Id.* at 12.

11        The government also seeks dismissal under Rule 12(b)(6), arguing Washington fails to
12  assert sufficient factual claims. *Id.* at 14. While Washington alleges he is entitled to $29,876.12
13  for funds levied and applied to his 2003, 2004, 2007, and 2008 income tax liabilities, the
14  government contends he does not provide any explanation as to why he does not owe these tax
15  liabilities. *Id.* at 15. Instead, the government argues, "he provides a distraction, by stating that
16  due to an alleged identity theft on an income tax return filed for 2011, the levies applied to the tax
17  years at issue should be refunded to him," yet "nothing in his Complaint or supporting
18  documentation explains why a purported identity theft years after the liabilities at issue arose
19  justifies any kind of refund." *Id.*

20        The Court finds the jurisdictional issues dispositive and therefore focuses its analysis on
21  the government's arguments under Rule 12(b)(1).

### III.  LEGAL STANDARD

23        Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power
24  authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*
25  *v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Accordingly, "[i]t
26  is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing
27  the contrary rests upon the party asserting jurisdiction." *Id.*; *Chandler v. State Farm Mut. Auto.*
28  *Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

1    Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit
2    for lack of subject matter jurisdiction.  A jurisdictional challenge may be facial or factual.  *Safe*
3    *Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the
4    court determines whether the allegations contained in the complaint are sufficient on their face to
5    invoke federal jurisdiction, accepting all material allegations in the complaint as true and
6    construing them in favor of the party asserting jurisdiction.  *Warth v. Seldin*, 422 U.S. 490, 501
7    (1975).  Where the attack is factual, however, "the court need not presume the truthfulness of the
8    plaintiff's allegations."  *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving a factual dispute as
9    to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the
10   complaint without converting a motion to dismiss into one for summary judgment.  *Id.*; *McCarthy*
11   *v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any
12   evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of
13   jurisdiction").

## IV.   DISCUSSION

15   It is well settled that the United States, as sovereign, may not be sued without its consent,
16   and that the terms of its consent define the court's jurisdiction.  *See United States v. Dalm*, 494
17   U.S. 596, 608 (1990); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Testan*,
18   424 U.S. 392, 399 (1976).  Waivers of sovereign immunity must be unequivocally expressed and
19   are "strictly construed" in favor of the government.  *United States v. Idaho Dep't of Water Res.*,
20   508 U.S. 1, 6-7 (1993); *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992); *Mitchell*, 445
21   U.S. at 538.  Consequently, no suit may be maintained against the United States unless the suit is
22   brought in exact compliance with the terms of a statute under which the United States has
23   consented to be sued.  *United States v. Sherwood*, 312 U.S. 584, 590 (1941).  Where the United
24   States has not consented to suit and there is no waiver of sovereign immunity, the Court lacks
25   jurisdiction over the subject matter of the action and dismissal is required.  *Gilbert v. DaGrossa*,
26   756 F.2d 1455, 1458 (9th Cir. 1985); *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir.
27   1982); *Nordic Village*, 503 U.S. at 34.

**A.     Wrongful Levy Under 26 U.S.C. § 7426**

Washington lists a wrongful levy as one of his causes of action.  26 U.S.C. § 7426(a)(1) provides the exclusive remedy for third-party wrongful levy claims.  *See EC Term of Years Tr. v. United States*, 550 U.S. 429, 435 (2007).  "If a levy has been made on property, any person, *other than the person against whom the tax out of which such levy arose is assessed*, who claims an interest in the property, and claims that such property was wrongfully levied upon, may bring a civil action against the United States."  26 U.S.C. § 7426(a)(1) (emphasis added).  In other words, if the IRS levies upon property held by a third party to collect taxes owed by another, the third party, not the taxpayer, may bring a wrongful levy action against the United States pursuant to § 7426(a)(1).  Here, Washington is the taxpayer and not a third party.  As such, he is barred from bringing a wrongful levy claim.

Moreover, pursuant to 26 U.S.C. § 6532(c)(1), any claim under § 7426 must be commenced within two years of the date of the levy.  Here, the levy took place in 2013, yet Washington commenced this action in 2020.  As such, even if Washington could bring a wrongful levy claim, it is untimely.

Finally, in his opposition, Washington fails to address his wrongful levy claim under § 7426, thus leaving the government's motion uncontested.  In sum, Washington may not bring a wrongful levy claim under § 7426, any such claim would be untimely, and the Court therefore lacks subject matter jurisdiction over this claim.

**B.     Refund Claim Under 26 U.S.C. § 7422**

In his complaint, Washington appears to seek a refund of the funds that were levied by the IRS and applied to his 2003, 2004, 2007, and 2008 income tax liabilities.  Compl. at 2, 9.  However, in his opposition, he admits he is not "contesting the validity of the taxes due for 2019, 2003, 2004, 2007, 2008, or any other year."  Opp'n at 7.  Regardless, the Court lacks subject matter jurisdiction over these claims.

For a Court to have subject matter jurisdiction over a tax refund suit, a taxpayer must satisfy certain jurisdictional prerequisites.  Generally, first, the taxpayer must have filed a proper and timely claim for refund with the IRS, in accordance with 26 U.S.C. § 7422(a).  *Dalm*, 494

1  U.S. at 601-02; *Boyd v. United States*, 762 F.2d 1369, 1371 (9th Cir. 1985). Second, the

2  taxpayer's claim for refund must either have been rejected by the IRS or not have been acted upon

3  by the IRS for six months. 26 U.S.C. § 6532(a)(1); *Thomas v. United States*, 755 F.2d 728, 729

4  (9th Cir. 1985). And third, a taxpayer must have "fully paid" the tax for which a refund is sought.

5  *Flora v. United States*, 357 U.S. 63, 75 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960); *Thomas*, 755

6  F.2d at 729. "If the refund claim does not meet the requirements of the Code and the regulations,

7  the suit must be dismissed." *Boyd*, 762 F.2d at 1371 (citing *L.E. Myers Co. v. United States*, 673

8  F.2d 1366, 1367 (Ct. Cl. 1982)). This is "because filing pursuant to the rules is a jurisdictional

9  prerequisite." *Id.* (citing *Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir. 1979) (per

10 curiam); *Bear Valley Mut. Water Co. v. Riddell*, 493 F.2d 948, 951 (9th Cir. 1974)).

11     Here, Washington failed to file a proper administrative claim for refund. First, Form 843

12 is not a valid vehicle for claiming a refund of income taxes, and the regulations require that a

13 claim for refund be made on Form 1040. *See* 26 C.F.R. § 1.6012-1(a)(6); 26 C.F.R. § 301.6402-

14 3(a)(2); 26 C.F.R. § 301.6402–3(a)(5); *Wheelis v. United States*, 2002 WL 1482527, at *2 (D.

15 Ariz. May 22, 2002) ("Form 843 is not a valid vehicle for claiming a refund of income taxes. The

16 regulations require that a claim for refund be made on Form 1040."). As such, Washington did

17 not submit a proper administrative refund claim with the IRS for a refund of his 2003, 2004, 2007,

18 and 2008 tax liabilities, and there is nothing in the complaint or exhibits to suggest he filed any

19 other document that can be construed as a proper refund claim.

20     Further, Washington's Form 843 and subsequent letters to the IRS cannot constitute a

21 timely informal refund claim because they fail to adequately apprise the IRS of his request. These

22 letters include correspondence from Washington to the IRS dated December 13, 2015 (Compl.,

23 Ex. 16) in response to a letter dated December 10, 2015, advising him that the Form 843 he

24 submitted is viewed as a frivolous position (*id.*, Ex. 19), as well as letters he sent to additional

25 individuals within the IRS referring to his wrongful levy claim on June 25, 2015 (*id.*, Ex. 18),

26 October 12, 2015 (*id.*, Ex. 17), and January 6, 2017 (*id.*, Ex. 15). However, it is unclear from

27 these documents what periods he is seeking a refund for and what amount he is seeking for each of

28 the periods. None of these letters provide details of the alleged erroneous levies, such as the dates

of such levies, the liabilities they were applied to, or the basis for his contention that such levies were erroneous. *See* 26 C.F.R. § 301.6402-2(b)(1) ("The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. . ... A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."); *United States v. Kales*, 314 U.S. 186, 194 (1941) (notice must fairly advise the IRS "of the nature of the taxpayer's claim"); *Duggan v. United States*, 757 F. App'x 533, 535 (9th Cir. 2018); *Boyd*, 762 F.2d at 1372 ("[T]he IRS is entitled to take the refund claim at face value and examine only the points to which it directs attention. If the claim on its face does not call for investigation of a question, the taxpayer may not later raise that question in a refund suit.") (internal citations omitted).

Moreover, any informal claim must still be later formalized in order to be considered a proper timely refund claim. *See Kales*, 314 U.S. at 194 ("This Court, applying the statute and regulations, has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim *where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period*") (emphasis added, internal citations omitted); *Duggan*, 757 F. App'x at 535; *Comm'r of Internal Revenue v. Ewing*, 439 F.3d 1009, 1015 (9th Cir. 2006); *Pennoni v. United States*, 86 Fed. Cl. 351, 363-64 (2009) (and cases cited therein). Nothing in Washington's opposition shows that he has satisfied these requirements or formalized his refund claim at any point. As such, he failed to show that he has made a proper administrative claim for refund with the IRS.

Finally, the Form 843 is dated April 12, 2015, and the subsequent letters addressing Form 843 are dated June 25, October 12, and December 13, 2015, and January 6, 2017. Compl., Exs. 13, 15-18. Even if the Form 843 and subsequent letters can be construed as an informal claim for refund, the claim would only apply to the amounts levied after April 12, 2013. *See* 26 U.S.C. § 6511(b)(2)(B).

In his opposition, Washington relies on *Burch v. Sec'y of Health & Human Servs.*, 2010

1    WL 1676767, at *2 (Fed. Cl. Apr. 9, 2010), for the proposition that the requirements of 26 U.S.C.
2    §§ 7422 and 6511, when read in conjunction with § 1346, should be broadly construed.  Opp'n at
3    15-20.  Citing to the *Burch* Court's review of the history of the Supreme Court's interpretation of
4    the principal of sovereign immunity, he concludes that because the *Burch* Court observed that "In
5    recent years, however, the Supreme Court decisions concerning the sovereign immunity doctrine
6    seems to have taken a large step back from the rigorous enforcement of the doctrine specified in
7    the 1990s opinions," *Burch*, 2010 WL 1676767, at *5, this Court should decide that it has
8    jurisdiction over his claim.  Opp'n at 19.  The Court disagrees.

9         First, while the analysis in *Burch* shows some fluctuation in the strictness of the waiver of
10   sovereign immunity doctrine and arguable softening of its application by the Supreme Court, it
11   was done in the context of a party seeking to apply the strict construction principle to a statute or
12   section of a statute separate from the one that supplied the waiver of sovereign immunity itself.
13   *See Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (refusing to apply strict construction
14   principle to substantive provision of subsection where the waiver of sovereign immunity was
15   contained in another subsection); *United States v. White Mountain Apache Tribe*, 537 U.S. 465,
16   472-73 (2003) (holding that where one statute provides for a waiver of sovereign immunity to
17   enforce a separate statute, the latter statute is not subject to the strict construction principle).
18   Second, in another case identified by the *Burch* Court, *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S.
19   571 (2008), the Court analyzed "some ambiguity" in the law when applying the sovereign
20   immunity principle.  The *Richlin* Court in fact noted that when there is no ambiguity to construe,
21   "[t]here is no need for us to resort to the sovereign immunity canon."  *Id.* at 590.

22        Here, there is no ambiguity for the Court to interpret.  The requirements to establish
23   subject matter jurisdiction over a tax refund suit are unambiguous and have long been established
24   by courts.  As discussed above, for a court to have subject matter jurisdiction over a tax refund
25   suit, a taxpayer must satisfy certain jurisdictional prerequisites.  Numerous district courts within
26   the Ninth Circuit have continued to follow these principles, even after *Burch*.  *See, e.g., Jianglin*
27   *Zhou v. U.S. Internal Revenue Serv.*, 2019 WL 286115, at *3 (N.D. Cal. Jan. 22, 2019); *Rashidian*
28   *v. United States*, 2017 WL 6987687, at *2 (C.D. Cal. Dec. 7, 2017); *Waltner v. United States*,

2019 WL 176800, at *1-2 (D. Ariz. Jan. 11, 2019).

Finally, Washington argues that because the IRS did not issue a notice of disallowance in accordance with 26 U.S.C. § 6532 regarding his alleged claim, it "prohibited [him] from complying with Sections 7422(a) . . . ." Opp'n at 19. This argument is also unavailing. As demonstrated above, Washington failed to file a proper refund claim with the IRS, and as such, the IRS could not have denied such refund claim. Washington's argument effectively reverses the statutory order of operations, by which the IRS must receive a proper refund claim in order to reject it. Nothing in the statute prohibits taxpayers from making a proper refund claim on their own and then suing on it. Indeed, 26 U.S.C. § 6532 allows taxpayers to file suit after submitting a proper refund claim and waiting six months with no response. Thus, no action from the IRS was required to allow Washington to pursue his rights, had he made a proper claim for refund. To the extent action was required, the IRS did in fact let Washington know that his submission was problematic. On December 10, 2015, the IRS sent Washington a letter advising him that the Form 843 he submitted was viewed as a frivolous position, and further advising him that if it was not corrected, the IRS would assess a penalty against him. Compl., Ex. 19. Therefore, Washington was on notice that the IRS did not view his Form 843 as a valid refund claim, yet he still failed to submit a proper refund claim.

In sum, Washington failed to show that he has made a proper administrative claim for refund with the IRS, and because he never submitted a proper claim, no such claim was ever rejected or acted upon. Because he failed to satisfy the requirements of 26 U.S.C. § 7422, the Court lacks subject matter of this action.

**C.      Damages Claim Under 26 U.S.C. § 7433**

Washington also seeks damages under 26 U.S.C. § 7433, which allows taxpayers to bring a claim for damages if, "in the collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title." 26 U.S.C. § 7433(a). However, before bringing any such claim, taxpayers must exhaust their administrative remedies available within the IRS. 26 U.S.C. § 7433(d)(1); *Conforte*, 979 F.2d at 1377; *see also*

26 C.F.R. § 301.7433-1(e) (specifying required administrative remedies).[3]

Washington generally asserts he "has exhausted available administrative remedies." Compl. ¶ 24; Opp'n at 22. To demonstrate such exhaustion, he argues that he wrote to "the [IRS] Area Director", that the IRS wrote to him, that he communicated with various IRS employees by correspondence and by telephone, that he went before the Tax Court and participated in a CDP hearing, and that he contacted the Taxpayer Advocate Service, as well as his Congressman. Opp'n at 22.

26 C.F.R. § 301.7433-1(e) establishes the procedure for making an administrative claim for less than $1,000,000 in damages and provides that such claim must be: (1) sent in writing to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides; and (2) include the following: (i) name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim; (ii) the grounds, in reasonable detail, for the claim (include copies of any available substantiating documentation or correspondence with the IRS); (iii) a description of the injuries incurred by the taxpayer filing the claim (include copies of any available substantiating documentation or evidence); (iv) the dollar amount of the claim, including any damages that have not yet been incurred but which are reasonably foreseeable (include copies of any available substantiating documentation or evidence); and (v) the signature of the taxpayer or duly authorized representative. *Id.*

In his opposition, Washington points to a letter dated May 26, 2018 and addressed to the IRS Area Director, Attn: Compliance Technical Support Manager. Compl., Ex. 14. The letter

---

[3] Some courts have questioned whether this exhaustion requirement is jurisdictional in light of *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006), which states that statutory limitations should be viewed as non-jurisdictional in the absence of a clear statement that the limitation is jurisdictional. *See, e.g., Hoogerheide v. I.R.S.*, 637 F.3d 634, 636, 638 (6th Cir. 2011); *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011). Following the Supreme Court's decision in *Arbaugh*, however, the Ninth Circuit has retained the position articulated in *Conforte*, that the exhaustion requirement in § 7433 is jurisdictional. *See, e.g., Joseph v. United States*, 517 Fed. App'x 543 (9th Cir. 2013); *Camangian v. United States*, 475 Fed. App'x 216 (9th Cir. 2012); *Manant v. United States*, 498 Fed. App'x 752 (9th Cir. 2012). This result makes sense, because there can be no waiver of sovereign immunity where administrative remedies have not been exhausted.

14

does have some of the hallmarks of a valid claim. It includes Washington's name and contact information, a description of the injuries he alleges to have suffered (e.g., his allegations that he has not "been able to recover from this loss of monies," and that he is "unable to get my attorney's license back despite being under an indefinite suspension since 1997"), the amount of damages he sought ($155,000), and his signature. *Id.* The letter also indicates that "substantiating documentation is attached," though it is unclear what such substantiation was, as copies were not included with Washington's complaint or opposition. Thus, it remains unclear if Washington in fact fully complied with the requirements of 26 C.F.R. § 301.7433-1(e) for a valid claim for damages.

Regardless, even if the Court construes the May 26, 2018 letter as a valid administrative claim for damages, Washington's claim for damages is still untimely under 26 U.S.C. § 7433(d)(3), which provides that any action to enforce liability "may be brought only within two years after the date the right of action accrues." 26 C.F.R. § 301.7433-1(g)(2) provides that "a cause of action . . . accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action." *See also Dalm*, 494 U.S., at 608 (statute of limitations requiring suit against the government be brought within a certain time frame is one of the terms of consent to be sued); *Tritz v. United States*, 698 F. App'x 342, 343 (9th Cir. 2017). Here, Washington was aware of the levy at issue at the latest in January of 2013, when his employer sent him a Notice of Withholding. Compl., Ex. 9. Washington, however, made no administrative claim until five years later in 2018, and he brought this action seven years later, in 2020. Therefore, even if Washington's May 26, 2018 letter to the IRS can be construed as a valid claim for damages and an exhaustion of his administrative remedies, his claim for damages is untimely, and his damages claim under 26 U.S.C. § 7433 must be dismissed for lack of subject matter jurisdiction.

**D.    Liabilities for Taxable Years Other than 2003, 2004, 2007, and 2008**

In his complaint, Washington requests that "the installment payments, which to date, having no agreement commemorating same, be enjoined." Compl. at 9. While it is not entirely clear what "installment payments" Washington seeks to enjoin, his complaint attaches as exhibits

15

14 and 20-22 documents pertaining to the 2015 taxable year. The complaint also provides that Washington was "forced to pay $290 per month . . . for the tax periods 2015, 2016, 2017, and 2018 . . ." *Id.* ¶ 22. Further, as part of his opposition to the government's motion for an extension of time to respond to the complaint, Washington attached a Notice of Intent to Levy from the IRS pertaining to his income tax liabilities for the taxable year 2019. ECF No. 21 at 5. While Washington identifies the taxable years 2015 through 2019 in his complaint and the attachments thereto, he does not state that he is seeking a refund for any of these periods or contest any specific amount.

To the extent Washington seeks to bar the IRS from collection action pertaining to the taxable years 2015 through 2019, or any other taxable years, such claims are barred by the AIA. With limited exceptions not relevant here, the AIA, provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The purpose of this section is "to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sum be determined in a suit for refund." *Enochs v. Williams Packing Nav. Co.*, 370 U.S. 1, 7 (1962). The Act should be "strictly enforced." *Maxfield v. U.S. Postal Serv.*, 752 F.2d 433, 434 (9th Cir. 1984) (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725, 734 (1974)). The Court lacks subject matter jurisdiction to grant relief that falls within the purview of the AIA, which is designed to permit the government to assess and collect taxes with a minimum of pre-enforcement judicial interference. *Bob Jones Univ.*, 416 U.S. at 736. Unless the parties seeking to enjoin the government clearly set forth one of the limited statutory or judicially created exceptions to the AIA, the Court has no jurisdiction and the action must be dismissed. *Elias v. Connett*, 908 F.2d 521, 523 (9th Cir. 1990). The taxpayer must demonstrate that no circumstance exists in which the government could prevail in the suit. *United States v. Condo*, 782 F.2d 1502, 1506 (9th Cir. 1986) (citing *Enochs*, 370 U.S. at 7). The AIA has been broadly construed to deprive courts of jurisdiction to enjoin any type of IRS activity that may, even indirectly, affect the assessment or collection of taxes. *Bob Jones Univ.*, 416 U.S. at 738-39; *Blech v. United States*, 595 F.2d 462,

466 (9th Cir. 1979).

To the extent Washington requests the IRS be enjoined from collecting on his income tax liabilities for the taxable years 2015 through 2019, it is in clear interference with the IRS's tax collection actions. Accordingly, the AIA prohibits these claims unless he can demonstrate the government could not possibly prevail in this suit. However, not only does the complaint fail to allege or infer any exceptions to the AIA, *see McGraw v. United States*, 2008 WL 4000570 at *3 (W.D. Wash. 2008) (relief barred where no exception is alleged), nothing in the complaint indicates that the IRS made any assessments or took any collection actions without the authority provided by statute. Further, to the extent Washington disputes the assessment or collection actions taken in relation to the taxable years 2015 through 2019, he is not without remedy, as he can file (or could have filed) a refund claim with the IRS pursuant to 26 U.S.C. § 7422 or a claim for damages under 26 U.S.C. § 7433.

In sum, to the extent Washington seeks to enjoin the IRS from collection action for the taxable years 2015 through 2019 or any other taxable years, his claims are barred by the AIA, the Court lacks subject matter jurisdiction, and the claims must be dismissed.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the government's motion to dismiss for lack of subject matter jurisdiction. As leave to amend would be futile, this case is **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: January 20, 2021

THOMAS S. HIXSON
United States Magistrate Judge

17